Date signed September 24, 2012



IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

|  |  |
|---|---|
| POWER PLANT ENTERTAINMENT CASINO RESORT INDIANA, LLC, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ROSS J. MANGANO, et al. <br><br> Defendants. | Adversary Proceeding No. 11-00336-NVA |

**MEMORANDUM OPINION IN SUPPORT OF ORDER GRANTING
MOTION [dkt. 5] FOR ABSTENTION AND FOR REMAND**

This Memorandum addresses whether this Court should return to Maryland state court, a case which was removed to federal court under 28 U.S.C. § 1452. The Court concludes that it should.

This case originated as a civil action demanding $600 million in damages filed in the Maryland Circuit Court for Baltimore City (Case No. 24C11-001014). The action was removed to the United States Bankruptcy Court for the District of Maryland by four of the ten state court

1

defendants. The four removing defendants consist of three trusts, the J. Oliver Cunningham Trust, the Anne C. McLure Trust, and the Jane C. Warriner Trust (the "Trust Defendants") and Ross Mangano (together with the Trust Defendants, the "Removing Defendants").

The Removing Defendants own over 95% of a company known as Indiana Downs, LLC ("Indiana Downs") which controls a pari-mutuel racetrack, casino and two betting facilities in Indiana. Mr. Mangano acts as CEO of Indiana Downs, and oversees the three Trust Defendants as Trustee. Two months after the commencement of the state court action, Indiana Downs filed a voluntary Chapter 11 case in the United States Bankruptcy Court for the District of Delaware (Case No. 11-11046 BLS).

The plaintiffs in this action are the Cordish Company and two members of its "Power Plant Entertainment" group --PPE Indiana and PPE Maryland (the "Plaintiffs"). PPE Indiana and PPE Maryland are effectively controlled and owned by the Cordish Company. On September 10, 2007, PPE Indiana entered into a Development, Financing and Management Agreement ("Management Agreement") with Indiana Downs. Under the Management Afreement, PPE Indiana would manage the Indiana Live Casino ("Indiana Live"), a facility in Shelbyville, Indiana owned by Indiana Downs. As compensation under the Management Agreement, PPE Indiana was to receive a management fee equaling 4.5% of the gross revenue of Indiana Live, plus a potential annual incentive fee tied to the operating profits of the facility.[1] According to the Plaintiffs, a management fee was earned but never paid to PPE Indiana. Additionally, the brands "Live," "Makers Mark," and "NASCAR Restaurants," which are all trademark properties of the Cordish Company, were permitted to be used by Indiana Downs

---

[1] Before the permanent facility was completed in 2009, for the period of June 9, 2008 to March 2009 PPE Indiana managed a temporary gaming facility on excess land where the permanent facility was constructed.

under the terms of the Management Agreement. The Plaintiffs claim that PPE Indiana provided two forms of service to Indiana Downs under the Management Agreement, for which PPE Indiana did not receive the management fee to which it was entitled: 1) it supplied and managed employees and oversaw strategic marketing functions; and 2) it pursued use of trademark properties owned by its affiliate(s) including the Cordish Company.

The Plaintiffs claim that the Removing Defendants and Indiana Downs entered into a "Support Agreement" stating that the management fees payable by Indiana Downs to PPE Indiana, would be substantially financed by Removing Defendants. The Plaintiffs claim that this arrangement was memorialized in a letter dated October 30, 2007 between the Removing Defendants and Indiana Downs, and that the management fees payable by Indiana Downs under the Management Agreement, were to be funded according to a formula set out in the Support Agreement. It appears that the bulk of the management fees payable to PPE Indiana under the Management Agreement were supposed to have been funded by the Removing Defendants. The Plaintiffs allege that the Removing Defendants either never made their required payments to Indiana Downs, or directed Indiana Downs not to pay the management fees to PPE Indiana. In any event, the Plaintiffs allege that these monies were due to them but not paid by PPE Indiana, and that the failure to pay was caused one way or another by the Removing Defendants.

In 2009, Cordish formed PPE Maryland for the purpose of bidding on the rights to construct and manage a casino adjacent to the Arundel Mills Mall in Anne Arundel County, Maryland. In 2010, PPE Maryland was awarded the license to construct and manage the Maryland Live Casino. During the time PPE Maryland was attempting to obtain the license in Maryland, its Cordish affiliate company, PPE Indiana, was pursuing collection of its management fees from Indiana Downs through arbitration. The Plaintiffs allege that throughout

this process, all of the defendants named in the state court action maliciously and intentionally interfered with Cordish and PPE Maryland's business relationship with Anne Arundel County and other business partners throughout the state of Maryland.  Specifically, the Plaintiffs claim that the Removing Defendants tried to coerce Cordish to cause PPE Indiana to stop pursuing recovery of the management fees from Indiana Downs by threatening to generate adverse publicity about the Cordish affiliates that would adversely affect their licensing opportunity in Maryland.  The Plaintiffs claim that Mr. Mangano went so far as to threaten that if Cordish did not back off, he would claim publicly that PPE Indiana's faulty management of Indiana Live was responsible for the Indiana casino's financial struggles. The Plaintiffs believe Mr. Mangano knew that going public with this allegation, whether truthful or not, would negatively impact Cordish and PPE Maryland's ability to maintain the rights to build and manage the Maryland Live facility.

The Plaintiffs further claim that Removing Defendants conspired with parties based in Maryland (the "Non-removing Defendants"), to strip PPE Maryland of the right to build and manage Maryland Live.  They claim that Mr. Mangano made threats in a June 21, 2010 e-mail to Jonathan Cordish.  Plaintiffs allege that Mr. Mangano, in his capacity as trustee to the Trust Defendants that make up the remaining Removing Defendants, acted on his threats by conspiring with the Non-Removing Defendants to acquire the necessary signatures to overrule the Anne Arundel County Board's vote to allow PPE Maryland to build the casino, and together they were able to have that issue placed on the November 2, 2010 state election ballot through a petition. The Plaintiffs argue that the signatures needed for that petition were acquired through the use of fraudulent, deceitful, and illegal techniques.  They claim that negative commercials were made, and other forms of propaganda were used to discredit the Plaintiffs' ability to manage a casino.

The Plaintiffs claim these tactics caused delays in the development of the project, until PPE Maryland finally won the vote on the referendum on November 2, 2010.

On February 15, 2011, the Plaintiffs filed their action in the Maryland Circuit Court for Baltimore City, seeking to recover damages related to the cost of defending their rights to build Maryland Live, and for defamation of character, among other claims. The Plaintiffs' suit contains six counts: 1) Tortious Interference by Trust Defendants and Mr. Mangano, 2) False Light Invasion of Privacy by Mr. Mangano and The Trust Defendants against PPE Indiana, 3) False Light Invasion of Privacy by Mr. Mangano and the Trust Defendants against PPE Maryland and Cordish, 4) Defamation by Mr. Mangano and the Trust Defendants, 5) Civil Conspiracy by All the Ten Defendants, and 6) False Light Invasion of Privacy by the Non-Removing Defendants against PPE Indiana. The Plaintiffs demand $600 million in relief.

On April 7, 2011, Indiana Downs, still under Mr. Mangano's leadership, filed its Chapter 11 case in the United States Bankruptcy Court for the District of Delaware. At the time of its filing, Indiana Downs listed $208,319,814.00 in assets, $545,774,048.00 in secured claims, and $310,195.44 in unsecured claims.

Twenty-two days later, on April 29, 2011, Mr. Mangano and the Trust Defendants removed the Plaintiffs' state court to this Court on the grounds that Indiana Downs, now a debtor in a bankruptcy case, may have to indemnify Mr. Mangano and the Trust Defendants if they are found liable in the state court action, and that this would impact the bankruptcy estate.

As CEO of Indiana Downs, Mr. Mangano is a party to an Operating Agreement ("Operating Agreement") with Indiana Downs which includes an indemnification clause. (The Operating Agreement is appended to the Defendants' Response to the Plaintiffs' Motion to Remand.) Under Article IV of the Operating Agreement, Mr. Mangano is indemnified by

5

Indiana Downs for actions he takes while acting as CEO for Indiana Downs, except for excluded actions such as criminal acts. The clause gives Indiana Downs the right to approve any attorney for the indemnified party and the terms of any proposed settlement.

The Removing Defendants believe that Mr. Mangano's actions -- the actions about which they complain -- are within the indemnification clause and that Indiana Downs would be responsible to provide coverage. Accordingly, the Removing Defendants believe that given the possibility of indemnification and the potential impact on the bankruptcy estate, the action is sufficiently "related to" the bankruptcy case that removal to United States Bankruptcy Court is proper under 28 U.S.C. § 1452(a). After the case was removed, the Plaintiffs filed their Motion for Abstention and for Remand ("Motion to Remand").

Shortly before this Court heard the Motion to Remand, an additional event occurred. A settlement was reached through arbitration in the management fee dispute between Indiana Downs and PPE Indiana. In August 2011, Indiana Downs, the debtor party to the settlement, submitted its settlement to the Delaware Bankruptcy Court for approval. The effect of this agreement would have been to make Cordish and PPE Indiana unsecured creditors of the Indiana Downs bankruptcy estate. Unsecured creditors objected to approval of this agreement. The Delaware Bankruptcy Court did not approve or reject the settlement agreement. A week before a hearing in this Court on the Motion to Remand, Indiana Downs withdrew its motion for approval.

On November 21, 2011 this Court held a hearing on the Plaintiffs' Motion to Remand and the Removing Defendants' opposition.[2] The Court must now decide if abstention or remand

---

[2] The only evidence offered at the hearing was Plaintiffs' proffer of the testimony of a litigation lawyer from the Plaintiffs' counsel's law firm concerning whether the cases could be timely adjudicated in

is appropriate.  The Court concludes that the action should be returned to the Maryland state court on the bases of mandatory abstention, permissive abstention, and equitable remand.

### DISCUSSION

Under 28 U.S.C. § 1452(a) a party may remove a claim to this Court provided that jurisdiction exists in this Court under 28 U.S.C. § 1334.  Pursuant to 28 U.S.C. § 1334(b), United States district courts have jurisdiction over civil proceedings "related to cases under title 11."  The Fourth Circuit has found that a claim or action is "related to" a bankruptcy case when "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."[3]  A claim can be considered "related to," even if it is between third parties.[4]  The court in *A.H. Robins* went as far as to state that third party proceedings are considered "related to" a bankruptcy proceeding because the debtor was required to indemnify the third party defendant due to a contract.[5]

The Third Circuit has held that "related to" jurisdiction is not instantaneously triggered by the mere possibility that indemnification could be required of a debtor.[6] The Fourth Circuit has adopted the Third Circuit's *Pacor* test to determine the "existence of related to jurisdiction."[7]

---

Maryland state court if returned there.  The Court declined to hear the evidence on Defendants' objection that this witness, Plaintiffs' own co-counsel, would not provide unbiased expertise.

[3] *In re Celotex*, 124 F.3d 619, 625 (4th Cir. 1997)(quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002 n.11 (4th Cir. 1986) and *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)).

[4] *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995); *Owens-Illinois, Inc. v. Rapid Am. Corp.*, 124 F.3d 619, 625-26 (4th Cir. 1997).

[5] 788 F.2d at 1001, 1007.

[6] *In re Federated –Mogul Global, Inc.*, 300 F.3d 368, 382 (3d Cir. 2002); *Pacor, Inc. v. Higgins* 743 F.2d 984,995 (3d Cir. 1984).

[7] In *A.H. Robins,* the Fourth Circuit adopted the *Pacor* test that states, "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that*

The Fourth Circuit does not provide guidance as to whether the mere possibility of indemnification is sufficient to confer related to jurisdiction, but states only that related to jurisdiction exists if indemnity is *certain*.[8]  The Third Circuit seems to provide more guidance with respect to cases in which only the possibility of indemnification exists.[9] [10]

This Court need not go as far as to determine whether, in this case, indemnification is contractually mandated and a certainty, and whether the requirements of related to jurisdiction in the Fourth Circuit have been met.  When this Court considers all the bases upon which this case could be sent back to state court or retained in federal court, the Court concludes that it must send this case back to state court on Mandatory Abstention grounds, and that in addition, the case may properly be sent back to state court on the basis of Permissive Abstention and Equitable Remand.[11]

---

*proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate."  *Celotex*, 124 F.3d at 625-626 (citing: *788* F.2d at 1002 n.11; *Pacor*, 743 F.2d at 994).

[8] *Owens-Illinois*, 124 F.3d at 625-626.

[9] 300 F.3d at 382; 743 F.2d at 995.

[10] The Removing Defendants raise collateral estoppel.  They maintain that by virtue of possible rulings in the state court, Indiana Downs as Debtor may be collaterally stopped from re-litigating such matters in any potential proceeding regarding indemnification in the Bankruptcy Court.  They argue that this is reason not to send the case back to state court.   The Plaintiffs correctly point out that concerns regarding collateral estoppel involving this case already were brought to the attention of the Bankruptcy Court for the District of Delaware which has jurisdiction over the Debtor's case, including indemnification claims made against the Debtor.  That court was not swayed by this argument.  It allowed this proceeding to move forward by lifting automatic stay.

[11] In addition to their argument that the existence of the indemnification claim supports "related to" jurisdiction, the Removing Defendants also argue that the existence of indemnification rights supports their opposition to abstention and remand.  Without deciding the issue, it is pointed out here that there are weaknesses in the Removing Defendant's positions on these points.  The Removing Defendants point to an Operating Agreement between Mr. Mangano and the debtor (Indiana Downs) that includes the

### I.    Mandatory Abstention is Applicable ---<br>The Requirements of 28 U.S.C. § 1334(c)(2) Are Met

Pursuant to 28 U.S.C. § 1334(c)(2), the Bankruptcy Court must "abstain from hearing . . . a proceeding if an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction." Neither side disputes that an action is commenced in a state court of appropriate jurisdiction. The only dispute is whether the matter can be "timely adjudicated" in that forum. In determining whether the timely adjudication requirement is met, courts look at several factors, including: 1) any backlog in the state court system; 2) the status of bankruptcy proceedings; 3) the complexity of the issues brought in the action; and 4) whether the state court proceeding will lengthen "the administration or liquidation of the estate."[12] The correct inquiry is not where litigation would move the fastest, but whether it can be timely adjudicated in state court at all.[13] [T]imeliness must be referenced against the needs of the title 11 case, rather than against an absolute time guideline."[14]

Here, the Court has determined that the only criterion about which there could be any possible factual dispute with respect to this Court's duty to mandatorily abstain from hearing this case is whether this case could be timely adjudicated in state court. There is a complete absence

---

indemnification clause. Under it, Mr. Mangano is to be indemnified while acting in his capacity as CEO for Indiana Downs. The Removing Defendants do not address, however, that many of the charges brought by the Plaintiffs in the complaint are directed at Mr. Mangano himself while allegedly acting beyond his duty as CEO. The Removing Defendants never considered whether causes alleged in the complaint are within the indemnity exclusions of the Operating Agreement. They do not deal with specific charges in the state court action stating defamation , civil conspiracy, and torious interference of the contract.

[12] *In re Georgou*, 157 B.R. 847, 851 (N.D. Ill. 1993). *See also Parmalat Capital Finance Ltd. v. Bank of America Corp.*, 639 F.3d 572 (2nd Cir. 2011).

[13] *Trans World Airlines, Inc. v. Icahn (In re Trans World Airlines* 278 B.R. 42, 50 (Bankr. D. Del. 2002).

[14] 1 *Collier on Bankruptcy* § 3.05.

of evidence as to this issue in the record and the Court has no basis on which to make a factual finding.  Accordingly, the resolution of this issue, and thus the resolution of the entire mandatory abstention issue hinges on which party has the burden to show that a matter can be timely adjudicated in state court.  If the party seeking abstention has the burden, the case stays in federal court because the moving party will have failed to meet its burden by failing to show that the case can be timely adjudicated in state court.  On the other hand, if the party opposing abstention has the burden to show that the matter cannot be timely adjudicated in state court, the case goes back to state court because the party opposing remand had not met its burden.

Accordingly, the resolution of this matter requires that the Court determine which party bears the burden of proving whether or not timely adjudication can be met in state court.  The statute itself is silent on this point.  *See* 28 U.S.C. § 1334(c)(2).[15]  No binding precedent exists in the Fourth Circuit.

Several inferior courts within the Fourth Circuit have addressed the issue and there does not appear to be uniformity.  Some courts within the Fourth Circuit have found, expressly or impliedly, that the party seeking abstention has the burden to show affirmatively that the matter can be timely adjudicated. *See, e.g. Freeway Foods, Inc., Freeway Foods of Greensboro, Inc.*, 449 B.R. 860, 879 (Bankr.M.D.N.C. 2011); *Pluma v. Ferrell*, 2000 WL 33673752 (Bankr. M.D.N.C. 2000); *In re 3G Properties*, 2010 WL 4027770 (Bankr. E.D.N.C. 2010); *In re Griffin Services*, 2002 WL 31051042 (Bank. M.D.N.C. 2002).  Other courts within the Fourth Circuit have taken the opposite view: that the party opposing abstention must show that the matter cannot be timely adjudicated in state court. *See, Cline v. Quicken Loans Inc.,* 2011 WL 2633085

---

[15]  The notion of "timely adjudication" is not clear from the statute and has a meaning that has been honed through jurisprudence. *See Flores Rivera v. Telemundo Group*, 133 B.R. 674, n. 3 (D. Puerto Rico 1991).

(N.D.W.Va. 2011) (finding that mandatory abstention was appropriate in the absence of evidence of timely adjudication – thus presumptively placing the burden on the party opposing abstention.)

Many courts in other circuits, at both the circuit and lower levels, seem to favor placing the burden on the party seeking abstention to show that a case in state court can be timely adjudicated. Indeed, this comports with traditional jurisprudential notions of moving parties bearing the burden. *See*, e.g., *Stoe v. Flaherty,* 436 F.3d 209, 219 n. 5 (3d Cir. 2006) (indicating that the moving party had the "burden of proving his right to mandatory abstention); *In re Lorax Corp.*, 295 B.R. 83, 93 (Bankr. N.D.Tex. 2003) (the party seeking abstention must prove all elements of mandatory abstention, including timely adjudication); *In re National Century Financial Enterprises, Inc., Inv. Litigation*, 323 F.Supp.2d 861, 881 (S.D.Ohio 2004) (timely adjudication must be proven by the moving party). Many of these courts do not offer their rationale for the presumption that federal jurisdiction is the automatic default position in the event that there is no evidence of timely adjudication.

In contrast, the Second Circuit recently offered a more comprehensive review of the "timely adjudication" element in *Parmalat Capital Finance Ltd. v. Bank of America Corp.*, 639 F.3d 572, 582 (2nd Cir. 2011). In *Parmalat,* the court explained that placing the "timely adjudication" burden on the party who seeks abstention and remand to state court "may [ ] be inconsistent with the mandatory nature of abstention under § 1334(c)(2) as well as the principles of comity, which presume that a state court will operate efficiently and effectively."[16]

---

[16] *Id.* (citing *Younger v. Harris,* 401 U.S. 37, 44, (1971)).

The Court finds this rationale compelling. The idea that the party seeking mandatory abstention bears the burden of proof as to timely adjudication seemingly conflicts with the general rule that the "burden of demonstrating jurisdiction resides with 'the party seeking removal.'"[17] If a party seeking to remove a case to federal court bears a general burden of proof to support removal, that party should have the burden to prove that timely adjudication is *not* likely in a state court in order to keep his case in federal court. This is especially true in light of the Supreme Court's mandate that federal courts should presume that state courts "operate efficiently and effectively."[18] Requiring a mandatory abstention movant to prove the ability of a state court to adjudicate timely is contrary to the general presumption that a cause exists outside of the jurisdiction of the federal court.[19]

Accordingly, this Court determines that the better view is that there is a presumption that the state courts operate timely and efficiently and the party seeking abstention is not required to affirmatively prove this facet of the abstention test in the absence of evidence from the opposing party. In the instant case, because neither party offered evidence with respect to the ability of the state court to timely adjudicate this case, the Court will apply the presumption that the state court is capable. Because other elements of mandatory abstention have been met, this Court must abstain, and send the case back to state court.

---

[17] *Barbour v. Intern. Union*, 640 F.3d 599, 629 (4th Cir. 2011) (citing *Mayes v. Rapoport,* 198 F.3d 457, 460 (4th Cir.1999)).

[18] *Parmalat*, 639 F.3d at 582 (citing: *Younger*, 401 U.S. at 44, 91). In *Younger* the Supreme Court opines that state courts are a "vital consideration, the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger*, 401 U.S. at 44.

[19] *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994)(citing: *Turner v. Bank of North America,* 4 U.S. 8, 11 (1799); *McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 182-183, (1936)).

## II. The Court Will Abstain Permissively ---
## The Requirements of 28 U.S.C. § 1334(c)(1) Have Been Met

As an equal and alternative basis for its holding, this Court exercises permissive abstention. The court is permitted to abstain from hearing a case that arises under or arises in or related to a case under title 11 "in the interest of justice, or in the interest of comity with State courts or respect for State law."[20] While the statute does not give any specific direction as to the factors a court is to analyze in the interest of justice, courts have determined that an assessment of the following factors is appropriate:

> (1) efficiency in the administration of the debtor's estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) whether the issues involve difficult or unsettled questions of state law that would be better addressed by a state court; (4) the presence of a related proceeding commenced in state court; (5) the existence of a jurisdictional basis other than § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court; (9) the burden of the federal court's docket; (10) the likelihood that the commencement of the proceeding in federal court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) whether non-debtor parties are involved in the proceeding.[21]

*MacLeod v. Dalkon Shield Claimants Trust*, 967 F.Supp. 856, 858 (D. Md.1997); *See also, In re HQ Global Holdings, Inc.*, 293 B.R. 839, 842 (Bankr. D. Del. 2003); *In re Porter–Hayden Co.*, 304 B.R. 725, 735 (Bankr.D.Md.2004).

---

[20] 28 U.S.C. §1334(c)(1).

[21] *Id.*; see also *In re Porter–Hayden Co. supra*, at 735.

The Court addresses each factor herein:

### 1) *Efficient Administration of the Debtor's Estate*

There is the possibility that a judgment against Mr. Mangano in this case would affect the pending bankruptcy case because there would be a request for indemnification of that claim in the bankruptcy court. While this may be true, it is not uncommon for a claim to be liquidated in state court and for indemnification rights, if any, to be dealt with in the context of the bankruptcy case. Liquidating the underlying claim in the bankruptcy court will not make the bankruptcy case more efficient. Moreover, the efficiency of the bankruptcy case will be preserved if it can be determined whether there is any real dollar value to be had from the allowance of an indemnity claim or if the *pro rata* distribution on such a claim would be such that the return is not worth the effort. This factor weighs in favor of abstention and remand.

### 2) *The Extent to Which State Law Issues Predominate over Bankruptcy Issues*

The claims that are central to this litigation are based in state law. As stated previously, the complaint filed in the Circuit Court sounds in six counts: 1) Tortious Interference by Trust Defendants and Mr. Mangano, 2) False Light Invasion of Privacy by Mr. Mangano and The Trust Defendants against PPE Indiana, 3) False Light Invasion of Privacy by Mr. Mangano and the Trust Defendants against PPE Maryland and Cordish, 4) Defamation by Mr. Mangano and the Trust Defendants, 5) Civil Conspiracy by All the Ten Defendants, and 6) False Light Invasion of Privacy by the Non-Removing Defendants against PPE Indiana. There is not even one pendent or related federal or bankruptcy law claim. This factor weighs in favor of abstention and remand.

3) *Whether the Issues Involve Difficult or Unsettled Questions of State Law that would be Better Addressed by a State Court*

Both parties agree that the legal issues are not novel or complex. While the issues may not be legally complex, the parties undoubtedly rely on a complex, extensive and in all likelihood, disputed factual record. A state court is best suited to apply its knowledge and expertise of its legal standards in such circumstances.

4) *The Presence of a Related Proceeding Commenced in State Court*

This factor weighs heavily in favor of abstention and remand. This case has only been *partially* removed to federal court. There are five defendants who remain in state court regardless of the decision of this Court. If the Court keeps this case in the bankruptcy court system there will be *two* proceedings with the same facts and claims being heard simultaneously. This is antithesis of efficiency.

5) *The Existence of a Jurisdictional Basis Other than § 1334*

Both parties agree that § 1334 is the only jurisdictional basis that allows this case to be brought to the United States Bankruptcy Court. This factor weighs in favor of abstention and remand.

6) *The Degree of Relatedness or Remoteness of the Proceeding to the Main Bankruptcy Case*

The only potential link to the main bankruptcy proceeding is the possibility that there could be an indemnification claim against the bankruptcy estate as a result of pending litigation. The Court does not believe that there are any valid collateral estoppels concerns. See supra. While the state-based litigation is related to a pending bankruptcy case, it remains somewhat remote. The Court finds that this factor is neutral.

### 7) *The Substance Rather than Form of an Asserted "Core" Proceeding*

The Removing Defendants concede that the state-based litigation is not a core proceeding. The Removing Defendants attempt to assign ulterior motives to the Plaintiffs' failure to name debtors as defendants in the state-based litigation. The Removing Defendants assert that the Plaintiffs were attempting to avoid the litigation being labeled a core matter and also attempting to avoid the effect of the automatic stay. Whatever the Plaintiffs' motives may have been, simply adding an additional party would not be sufficient to make this state-law litigation a core proceeding. It also bears noting that the state-court litigation was filed two months prior to the bankruptcy filing. This factor weighs in favor of abstention and remand.

### 8) *The Feasibility of Severing State Law Claims from Core Bankruptcy Matters to Allow Judgments to be Entered in State Court*

Because the claims at issue are all state law claims, there is nothing to sever. This factor weighs in favor of abstention and remand.

### 9) *The Burden of the Federal Court's Docket*

This is undoubtedly a major piece of litigation with motivated parties and able counsel. The Court has no doubt that the matter will be masterfully prepared and tried, thus greatly aiding the assigned court. Nevertheless, the federal courts' docket must be considered. This factor weighs in favor of abstention and remand.

### 10) *The Likelihood that the Commencement of the Proceeding in Federal Court Involves Forum Shopping by One of the Parties*

The Court sees no evidence of forum shopping by either side. This factor is neutral.

### 11) *The Existence of a Right to a Jury Trial*

The Removing Defendants concede that the Plaintiffs have a right to a jury trial. This right is best protected in state court. *See*, *In re Merry-Go-Round,* 222 B.R. 254, 256-58 (D. Md.

16

1998). Even though a jury trial may be had in federal court, the idea that two jury trials could go forward on the same facts in two different for a seems a particularly useless waste of resources. This factor weighs in favor of abstention and remand.

### 12) Whether Non-Debtor Parties are Involved in the Proceeding

The only parties involved in this case are non-debtors. Although the Removing Defendants *may* have an indemnification claim against a debtor estate after the state court litigation is complete, there are no debtors in this litigation. This factor weighs in favor of abstention and remand.

### Overall Factor Analysis

An analysis of the foregoing factors tips heavily in favor of permissive abstention. The state law nature of the claims predominates and several of the defendants remain in state court regardless of the outcome of this motion. Based on all applicable considerations, the Court will permissively abstain, and send this matter back to state court.

### III. Additional Considerations Indicate that Equitable Remand is Appropriate

Remand may also be made, in appropriate circumstances, on general equitable grounds. See 8 U.S.C. § 1452(b). Factors that indicate that a case is appropriate for equitable remand include, in addition to consideration of several of the permissive abstention factors, the "efficient use of judicial resources, the possibility of inconsistent results and the expertise of the court where the action originated. In re *Merry-Go-Round, supra,* 222 B.R at 257-258.

In *Merry-Go-Round,* the chapter 7 trustee sued the former accountants for the debtor for fraud, malpractice, and negligence by a Chapter 7 trustee. Even though the case was brought by a chapter 7 trustee and even though the proceeds of the lawsuit would fund the chapter 7 estate,

the Merry Go Round Court remanded the case on equitable grounds. Id. at 256. Accordingly, the fact that aspects of this litigation are somewhat tethered to a bankruptcy case does not bar equitable remand to state court.

The Court believes that the goal of judicial efficiency is promoted by remand because there exist in this litigation several Non-Removing Defendants. If this Court were to retain jurisdiction over this case, there is the very real possibility that the claims against the Non-Removing Defendants would be tried in state court, setting in motion the wheels of duplicative justice and allowing for the possibility of inconsistent rulings. Accordingly, for the foregoing reasons, this Court remands this case on equitable grounds.

**CONCLUSION**

For the foregoing reasons, this Court will abstain from hearing this matter and this case will be remanded to the Circuit Court for Baltimore City. A separate order will enter.

**END OF MEMORANDUM**